# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **MATHEW ROGERS,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **DUKE & CO, LLC d/b/a DYNAMIC CAPITAL** <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mathew Rogers ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Duke & Co, LLC d/b/a Dynamic Capital and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent. Defendant also alleges Plaintiff violated the TCPA by using an artificial or prerecorded voice without prior express written consent in violation of 47 U.S.C. § 227(b)(1)(A) and failing to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls," pursuant to 47 C.F.R. § 64.1200(d).

**PARTIES**

4. Plaintiff Mathew Rogers is an individual residing in the Middle District of Tennessee.

5. Defendant Duke & Co, LLC d/b/a Dynamic Capital is headquartered in Miami, Miami-Dade County, Florida.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has specific personal jurisdiction over Defendant because the company purposefully availed itself of conducting business in this District, including by sending telemarketing calls to the Plaintiff.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent into this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## TCPA BACKGROUND

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

14. The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

15. The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

16. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff's residential telephone number is 608-774-XXXX.

18. Plaintiff personally listed his telephone number on the National Do-Not-Call Registry on January 22, 2007, and has not removed it from the Registry since that time.

19. Plaintiff uses this telephone number for personal, residential, and household purposes. He does not associate the number with a business.

20. Over the past twelve (12) months, Plaintiff received at least four (4) telephone solicitations from Defendant on his residential telephone 608-774-XXXX.

21. Each of Defendant's calls were made for the purpose of advertising Defendant's business financing and loan services.

22. Each of Defendant's calls clearly utilized prerecorded artificial intelligence technology.

23. Specifically, the messages were delivered in a robotic or automated voice with an unnatural and monotone cadence, rather than by a live person.

24. Additionally, if Plaintiff answered the call, there was a slight delay after he picked up and before the robot delivered the standardized message to provide time for the system to connect Plaintiff to the prerecorded message.

25. Likewise, when Plaintiff did not answer, there was a brief pause or silence before the robot left a voicemail.

26. On at least one occasion, Plaintiff answered Defendant's call and informed Defendant that he was not interested in Defendant's services, but Defendant did not stop calling.

27. Plaintiff also specifically requested that he be placed on Defendant's Internal Do-Not-Call list.

28. Nevertheless, Plaintiff continued to receive telephone solicitation calls from Defendant.

29. In a further attempt to stop Defendant's persistent and harassing prerecorded calls, Plaintiff purchased an AI-powered screening feature to help filter out robocalls and spam by using AI to identify and block unwanted calls, but unfortunately it did not work.

30. For instance, on December 16, 2024, Plaintiff received a solicitation voicemail from Defendant on his residential telephone 608-774-XXXX. This call came from Defendant's telephone number, 904-605-8148.

31. On December 18, 2024, Defendant received the following robot/AI voicemail from Defendant's number, 904-605-8149, promoting Defendant's business:

> No problem. Just let Matthew know that Dolly from dynamic capital called to discuss some exciting working capital options for his business. I'll be waiting for him to get back to me. Have a great day.

32. On December 21, 2024, Plaintiff received another persistent robot/AI voicemail from Defendant on his residential telephone 608-774-XXXX. This call also came from Defendant's number, 904-605-8149.

33. The contents of this voicemail are as follows:

> Uh-huh, no problem at all. Just let Matthew know that Dolly from dynamic Capital called and I'm eager to help him with some working capital options for his business. He can reach me anytime and I promise to make it worth his while. Thanks for your help and have a great day.

34. Despite not responding to either of these voicemails, Plaintiff received yet another prerecorded AI call from Defendant to his residential telephone number, 608-774-XXXX, on December 23, 2024. This call also came from the number 949-517-7937.

35. Plaintiff answered this call and spoke with Defendant AI Chatbot "Dolly." Plaintiff asked the Chatbot if he was already on or could be put on Defendant's Do Not Call list, and the bot replied "I recommend reaching out to our customer service team directly." Plaintiff then asked the Chatbot for the customer service team number, which the Chatbot could not provide.

36. Plaintiff was frustrated and harassed by the repeated calls and voicemail solicitations from Defendant.

37. Plaintiff and other individuals who received these telephone solicitations suffered an invasion of privacy and were harassed by the conduct of Defendant.

## CLASS ACTION ALLEGATIONS

38. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

39. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **Prerecorded Voice Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received a telephone call (2) on their cellular phone (3) from Defendant or on its behalf (4) that used an artificial or prerecorded voice.
>
> **National DNC Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and the date of class certification, (1) received two or more telephone calls or text messages (2) in any 12-month period (3) from Defendant or on its behalf (4) for the purpose of encouraging the purchase of goods or services (5) after their telephone number had been listed on the National DNC for at least thirty-one days.

40. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant' records, or those of their agents.

41. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant' uniform illegal conduct.

42. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of the Classes and Defendant have no defenses unique to Plaintiff.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

    a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    c. Whether Defendant used an artificial or prerecorded voice to make the calls at issue;

    d. Whether Defendant failed to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls" pursuant to 47 C.F.R. § 64.1200(d); and

    e. Damages including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

44. **Superiority:** Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions

would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

45. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

    d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Prerecorded Voice Class)**

46. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent.

48. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

49. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

50. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

51. Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

52. These violations were willful or knowing.

53. As a result of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

54. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the classes pursuant to 47 U.S.C. § 227; and

E. Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: August 25, 2025                  Respectfully Submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC.**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gstranch@stranchlaw.com

Samuel J. Strauss*
**STRAUSS BORRELLI, PLLC**
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com

Anthony Paronich*
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018

anthony@paronichlaw.com

*Pro have vice forthcoming*

*Attorneys for Plaintiff and the Proposed Class*